UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| **JANINE PERRY,**<br>12045 Bamburgh Court<br>Waldorf, MD 20602<br><br>    Plaintiff,<br><br>    v.<br><br>**CONDOLEEZZA RICE, Secretary,**<br>    **U.S. DEPARTMENT OF STATE**<br><br>    Serve:  Condoleezza Rice<br>             2201 C Street NW,<br>             Washington, DC  20520<br><br>             Jeffrey A. Taylor<br>             Office of the United States Attorney<br>             Attention:  Civil Process Clerk<br>             501 3rd Street, N.W.<br>             4th Floor<br>             Washington, D.C. 20001<br><br>             Michael B. Mukasey<br>             United States Attorney General<br>             c/o Department of Justice<br>             950 Pennsylvania Avenue, N.W.<br>             Room B-103<br>             Washington, D.C. 20530-0001<br><br>    Defendant. | Civil Action Number: |

**COMPLAINT**

    1.    This is an action against Condoleezza Rice, Secretary of the U.S. Department of State, in her official capacity for monetary damages and equitable relief for injuries Plaintiff Janine Perry sustained as a result of the Defendant's creation and maintenance of a discriminatory workplace on the basis of Ms. Perry's race, African-

American, and/or gender, female, in which Defendant pays Ms. Perry substantially less money than similarly situated white male employees and/or white female employees for performing substantially similar work. Upon information and belief, Defendant engages in a pattern and practice of paying black and/or female employees substantially less for similar work performed by non-black and/or male employees. Additionally, Defendant has retaliated against Ms. Perry in retaliation for her participation in EEO activity and her objection to practices in violation of the EEO laws.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e-16 and 42 USC § 2000e-3. Venue is appropriate because all the discriminatory acts occurred in the District of Columbia.

3.      Plaintiff has exhausted her administrative remedies in that she is filing this lawsuit within 90 days of her receipt of the Final Agency Decision. 29 C.F.R. § 1614.407.

## PARTIES

4.      Ms. Perry resides at 12045 Bamburgh Court, Waldorf, MD 20602.

5.      Defendant Condoleezza Rice is the Secretary of the Department of State. She is being sued in her official capacity. Her business address is 2201 C Street NW, Washington, DC 20520.

## FACTS

6.      Ms. Perry is an African-American woman. She is 43 years old.

7.      During the time relevant to this Complaint, Ms. Perry was a GS-12, Website Manager assigned to the Bureau of International Information Programs.

8.      Ms. Perry has been in that position for a little over three years, having worked for Department of State for over 22 years.

9. For part of that time, her immediate supervisor was Gerard Joria, Office Director for Western Hemisphere Affairs.

10. Ms. Perry worked alongside a male Website Manager, Francisco DeLeon. The Agency classifies his Website Manager position as a GS-13.

11. Just prior to becoming a Website Manager, Ms. Perry was a Program Coordinator, GS-11. However, as Program Coordinator, Ms. Perry was actually performing the duties of a Website Manager and had been since approximately 1997. Her February 2003 performance plan describes Ms. Perry's duties as:

> Creates, maintains, and updates regional English-language Internet Web sites, including Americas homepage and regional pages. Prepares the regional English and Spanish-language Washington File for dissemination.

12. Her then supervisor, Domenick DiPasquale, further noted:

> "In her role as both editor of our regional Washington File and English language Webmaster of the Americas page, Janine is key to the daily output of policy material that we send to our embassies throughout the Western Hemisphere. It has been a demanding seven months, but she has done an excellent job in holding down the fort."
> ***
> [Ms. Perry] handled these responsibilities very well; our Cuba page became one of the premiere USG sites for finding timely policy information on this issue.

13. Ms. Perry received an "excellent" rating.

14. Ms. Perry began performing her website duties before the position Website Manager had even been created. Eventually, the Bureau of International Information Programs (the Bureau) began to hire people for the position of Website Manager in its several sections. The standard, boilerplate position description identified this as a <u>GS-13</u> position. The Agency hired 12 people for the website manager position all at the GS-13 level. Several were hired while she was in the GS-11 Program Coordinator position and several newly hired employees received a Website Manager

GS-13 position after Ms. Perry, as explained below, received a Website Manager GS-12 position.

15. For approximately two years, Ms. Perry continued to work as a GS-11 Program Coordinator, even though she performed substantially the same duties identified in the position description for Website Manager, GS-13. She eventually brought this discrepancy to the attention of Mr. DiPasquale, her supervisor from August 2000 until August 2003. He agreed that she should be a GS-13 Website Manager.

16. However, Mr. DiPasquale explained that Ms. Perry could not jump from a GS-11 to a GS-13. He indicated he would create a GS-12 Website Manager position for Ms. Perry (as opposed to using the boilerplate GS-13 Website Manager PD) and, after staying in that position for a year, the Agency would make her a GS-13. Mr. Dipasquale created the position description for the website manager (GS-12) and Ms. Perry was non-competitively placed into the position.

17. The position, as created by Mr. DiPasquale and Personnel did not have potential beyond the GS-12. Mr. DiPasquale explained, per Personnel, that the position would have been listed as having potential for GS-13 if the position had been a true vacancy and had Ms. Perry not been non-competitively placed into the position. Mr. DiPasquale assured Ms. Perry that after being in the position for a year, her position would be classified as a GS-13, just like the non-African-American Website Managers.

18. Mr. DiPasquale retired in August 2003 and was replaced by Gerard Joria at that time. Before leaving, Mr. DiPasquale told Ms. Perry that he would inform Mr. Joria of the need to make Ms. Perry a GS-13 to be consistent with the other Website Managers within the Bureau.

19. Soon after starting as Ms. Perry's supervisor, Mr. Joria stated to Ms. Perry that he knew about an EEO complaint Ms. Perry had filed against an associate of his,

4

William (Bill) Bach, a few years earlier. Subsequent to that conversation, Ms. Perry found all of the EEO documents pertaining to that case on her desk. Mr. Joria told Ms. Perry that he had found the documents in the back room and placed them on her desk.

20. After being in the Website Manager position for 2 years as a GS-12, Ms. Perry reminded Mr. Joria of the need to treat her the same as the Agency treated the non African-American Website Managers and classify her Website Manager position at the GS-13 grade level. Mr. Joria, however, refused saying he did not think Ms. Perry should be a GS-13. Mr. Joria referred to another African-American employee who had been trying to get a higher grade for years and he told Ms. Perry that there was just no way it was going to happen. Mr. Joria also told Ms. Perry that, given the low grade level she had started with in the government, she should be grateful for the grade she now had. Mr. Joria showed no real interest in working with Ms. Perry in creating an Individual Development Plan (IDP). He also warned Ms. Perry that her preparing an Individual Development Plan (IDP) and getting more training would not lead to a grade increase for her. He advised Ms. Perry to look for a GS-13 somewhere else.

21. Mr. Joria claimed that the other comparable Website Managers who were GS-13s were "inflated" to the GS-13. Mr. Joria said he did not want to "inflate" Ms. Perry's grade as had been done with the other comparable Website Managers.

22. Ms. Perry brought the disparate treatment to the attention of Human Resources, who confirmed to Ms. Perry that she held the only Website Manager position classified as a GS-12. Human Resources advised her to request a desk audit of her Website Manager position. The Agency, in performing the audit received input from Mr. Joria, Ms. Perry, and others in management, who were non African-Americans. Prior to the desk audit, Mr. Joria told HR, that he did not think Ms. Perry should get a GS-13.

23. HR evaluated Ms. Perry's position using newly revised standards that had not been in place when her Website Manager position and the other Website Manager positions had been created. Using these newly revised standards, HR concluded that the position should be a GS-11. HR made this decision despite the fact that the very same office had made the very same position a GS-12 position just a few years earlier and would have given the position potential to GS-13 had it been a competitive selection.

24. Ms. Perry objected because several of her duties had been excluded from the audit. For example, Ms. Perry did not receive any credit for managing the Spanish language website in the absence of Mr. DeLeon. Nor did Ms. Perry receive credit for being the Washington File Editor.

25. In addition, Ms. Perry objected to the fact that she was the only black website manager and that she was the only website manager who was paid at the GS-12 level.

26. In a meeting with Human Resources, HR stated that Ms. Perry's position should be a GS-12 and that it would remain so. HR informed Ms. Perry that the GS-13 Website Manager positions may be reclassified at the GS-12 level from their current GS-13 level but that the individuals already holding those positions would maintain their current GS-13 grade level and pay. However, the Agency has never reclassified the other Website Manager positions.

27. Apparently troubled by the fact that the Agency was paying its only African American Website Manager at the GS-12 level and all the non-African-Americans at the GS-13 level, the person conducting the audit recommended that there be a Bureau wide review of GS-13 Website Managers. The auditor explained that the audit of Ms. Perry's position was based on newly revised standards that had not been in place when the GS-13 Website Manager positions had been created. In other words, the

Agency evaluated Ms. Perry using different standards than the ones it used for the non-African-Americans. Ms. Weston, therefore, recommended a bureau wide review and evaluation of other Website Manager positions to ensure they were properly classified. The Agency did not follow Ms. Weston's recommendation.

28. Ms. Paula Thomson (a non-African-American woman), a Website Manager in the Near Eastern Affairs office wondered aloud to Ms. Perry as to why she was only a GS-12 and Ms. Thomson was a GS-13 when they both "did the same thing."

29. Upon information and belief, the Defendant maintains a pattern and practice of paying persons such as Ms. Perry – that is black females – less than males and/or non-black females for performing substantially similar work.

30. Mr. Joria maintained this environment by not supporting Ms. Perry's request that she be paid the same compensation as that received by non-black women. In the alternative, Mr. Joria did not support paying Ms. Perry the same compensation as non-black women in retaliation for her prior EEO activity.

31. In addition, Defendant's management maintained this pattern and practice of discrimination when, even after learning that it was paying Ms. Thomson more than Ms. Perry for substantially similar work, it did nothing to remedy the situation such as increasing Ms. Perry's pay to match that of Ms. Thomson, the similarly situated white female.

32. In the alternative, Defendant did nothing to remedy the situation, e.g. increase Ms. Perry's pay and compensation to Ms. Thomson's level in retaliation for Ms. Perry's prior EEO activity and/or because she had objected to racial discrimination during the audit.

33. Since raising her EEO complaint, Ms. Perry was subjected to reprisal. For example, her supervisor has denied her training that, previous to the EEO complaint,

would have been routinely granted. Ms. Perry requested training in order to help her perform her duties more effectively. The training that she requested was directly related to her job. Ms. Perry submitted training requests that were directly related to the various subjects on which she worked when preparing content for the Washington File: Trade and Economics, Intellectual Property Rights, Democracy and Human Rights, Global Issues. All requests were denied by Mr. Joria. Ms. Perry also requested Spanish language training because she often managed the Spanish Website in Mr. DeLeon's absence and processed the Washington File material in Spanish. Mr. Joria denied Ms. Perry's requests for training, but allowed a non- African American, male co-worker, Scott Miller, to take the same Spanish language training. Had Ms. Perry been allowed to take the training she requested, she would have been able to work with a better understanding of the subject matter, would have performed her duties more efficiently, and could have improved her overall performance rating. It would have also made it possible for Ms. Perry to advance and receive her GS-13 position within the Bureau under the newly revised standards.

34. Additionally, Ms. Perry has had certain work duties taken away from her in reprisal for her EEO activities. These benefits would have resulted in the opportunity for Ms. Perry's advancement as well as additional compensation.

### COUNT I
### Discrimination in the Terms and Conditions of Employment
### Pattern and Practice of Discrimination
### 42 USC § 2000e-16

35. Plaintiff incorporates herein each and every allegation stated above.

36. Defendant discriminated against Ms. Perry when it compensated her less for performing the same work as her non-black and/or non female peers. This discrepancy in compensation was because of Ms. Perry's race and/or gender or both

factors and was in violation of the Civil Rights Act of 1991, 42 U.S.C. § 2000e-16. Defendant's actions towards Ms. Perry were consistent with a pattern and practice of discriminating against blacks and/or women in the terms and conditions in employment particularly in regard to the selection of persons for positions at above the GS-12 level.

37. As a result of Defendant's discrimination, Defendants' actions have caused Ms. Perry to sustain and continue to sustain direct and consequential damages, including, but not limited to, emotional pain and suffering, mental anguish, humiliation and embarrassment, damage to her professional reputation and development, loss of future employment opportunities, bodily injury, lost salary and the impairment of future earning capacity, justifying an award of compensatory damages, the amount to be determined by a jury at trial.

**Count II**
**42 USC § 2000e-3**
**Retaliation**

38. Plaintiff incorporates herein each and every allegation stated above.

39. Defendant engaged in protected activity when she filed her first EEO complaint and when she participated in the EEO action that is the subject of this suit. In addition, during the audit, Ms. Perry objected to the fact that she was the only black website manager and she was the only person being paid at the GS-12 level.

40. Defendant retaliated against Ms. Perry when Mr. Joria refused to support her request for a GS-13 and when Defendant refused to increase Ms. Perry's compensation to match that of her similarly situated white female co-worker, Paula Thomson, and they did this in retaliation for her prior EEO activity and her objections to the Defendant's discriminatory practices. In addition, Defendant denied Ms. Perry training and stripped her of some of her duties in retaliation for her EEO activity.

41. As a result of Defendant's retaliation, Ms. Perry has sustained and

continues to sustain direct and consequential damages, including, but not limited to, emotional pain and suffering, mental anguish, humiliation and embarrassment, damage to her professional reputation and development, loss of future employment opportunities, bodily injury, lost salary and the impairment of future earning capacity, justifying an award of compensatory damages, the amount to be determined by a jury at trial.

**WHEREFORE**, Plaintiff requests judgment against the Defendant as follows:

    a.    Award her a GS-13 position retroactive to that point in time when she would have received the promotion absent discriminatory and/or retaliatory intent;

    b.    Award her back pay retroactive to that date along with all other benefits to which she would have been entitled;

    c.    enjoin defendant from engaging in discrimination and from retaliating against plaintiff for pursuing this action;

    d.    award her costs and reasonable attorney's fees incurred in this action and the administrative claims that necessarily preceded it;

    e.    Pre-judgment interest;

    f.    Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

                                                Respectfully submitted,

                                                _____

                                                Michael G. Kane, Bar No. 435121

                                                _____

                                                David R. Cashdan, Bar No. 051342
                                                CASHDAN & KANE, PLLC
                                                1150 Connecticut Avenue, N.W.
                                                Suite 900
                                                Washington, D.C. 20036-4104
                                                Tel. (202) 862-4330
                                                Fax. (202) 862-4331

                                                Attorneys for Plaintiff
Dated: July 16, 2008                     *Janine Perry*

# CIVIL COVER SHEET

JS-44
Rev.1/05 DC

**I. (a) PLAINTIFFS**
Janine Perry

**DEFENDANTS**
Condoleezza Rice, Secretary, Department of State
In her official capacity

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** — Charles County
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** — DC
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Michael G. Kane, 435121
David R Cashdan 051342
Cashdan & Kane, 1150 Connecticut Ave, NW
1150 Connecticut Avenue, NW 20036
202-862-4330

Case: 1:08-cv-01216
Assigned To : Kennedy, Henry
Assign. Date : 7/16/2008
Description: Employ. Discrim.

08-1216 HHK JURY ACTION

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)
- ○ 1 U.S Government Plaintiff
- ● 2 U.S Government Defendant
- ○ 3 Federal Question (U.S Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**
☐ 410 Antitrust

**○ B. Personal Injury/Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**
Any nature of suit from any category may be selected for this category of case assignment.
*(If Antitrust, then A governs)*

**○ E. General Civil (Other)** OR **○ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)



| O G. *Habeas Corpus/* 2255 | ⊙ H. *Employment Discrimination* | O I. *FOIA/PRIVACY ACT* | O J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (If Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O K. *Labor/ERISA (non-employment)* | O L. *Other Civil Rights (non-employment)* | O M. *Contract* | O N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (If Voting Rights Act) |

**V. ORIGIN**
⊙ 1 Original Proceeding   O 2 Removed from State Court   O 3 Remanded from Appellate Court   O 4 Reinstated or Reopened   O 5 Transferred from another district (specify)   O 6 Multi district Litigation   O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
42 USC 2000e-16 and 42 USC 2000e-3 - This is an action based on discrimination and retaliation in compensation and other terms of employment.

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ 300,000   Check YES only if demanded in complaint
JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  7-16-08        SIGNATURE OF ATTORNEY OF RECORD   _[signature]_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence. Use 11001 to indicate plaintiff is resident of Washington, D.C., 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.