# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

JANINE PERRY,

                 **Plaintiff,**

     **v.**

HILLARY CLINTON, Secretary, U.S.
Department of State,

              **Defendant.**

</td><td>

Civil Action 08-01216  (RCL)

</td></tr>
</table>

## MEMORANDUM OPINION

Plaintiff Janine Perry brings this action against defendant Hillary Clinton, Secretary of the U.S. Department of State, in her official capacity ("Secretary"), alleging race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, as well as retaliation for asserting her rights under that statute, *id.* § 2000e-3. Before the Court is the Secretary's motion to dismiss or, in the alternative, for summary judgment [#25]. Upon consideration of the motion, the opposition thereto, the reply, the oral arguments of counsel and the record of this case, the Court concludes that the motion should be granted in part and denied in part.

## I. BACKGROUND

Janine Perry has been an employee of the Department of State ("Department") for more than twenty years. At some point during her tenure there, she joined the Bureau of International Information Programs, Geographic, Western Hemisphere Affairs and became a Program Coordinator; the position was classified as GS-11 on the federal pay scale. She alleges that she began performing the duties of a Website Manager before such a position existed. Other

individuals were eventually hired as Website Managers in her Bureau and other offices, and the Department classified them as GS-13.

Because other Website Managers were receiving GS-13 salaries, Perry requested a promotion.  According to Perry, Domenick DiPasquale, her supervisor at the time, informed her that she could not move from GS-11 directly to GS-13 but he would create a GS-12 position for her.  In July 2003, Perry became a Website Manager classified as GS-12.  She was placed in the position, which did not have the potential for promotion to GS-13, through a non-competitive process.  Perry alleges that DiPasquale told her that she would become a GS-13 after a year and that when DiPasquale retired in August 2003, he informed Perry's new supervisor, Gerard Joria, that Perry should become a GS-13 Website Manager.

Perry alleges that Joria told her shortly after he became her supervisor that he was aware of an Equal Employment Opportunity ("EEO") complaint she had filed in 1999.  She contends he located documents related to that complaint after she tried to dispose of them and that he left those documents in her office.  Apparently Joria knew the individual in regard to whom Perry had made the complaint.

In August 2004, Perry raised the issue of a promotion to GS-13 with Joria.  She asserts that she "reminded Mr. Joria of the need to treat me the same as the Agency treated the non-African-American Website Managers."  Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), Ex. 22 at ¶ 14 ("Perry Decl.").  Joria declined to promote Perry.  Perry alleges she was the only African-American Website Manager and, although her job description was "substantially the same" as those of the other Website Managers within the Department, she was the only one who was not classified as GS-13.  *Id.* ¶ 23.  In particular, she notes that Juan DeLeon also worked

under Joria as a Website Manager, and he was a GS-13.  She also contends that Paula Thomson, a GS-13 Website Manager in the Bureau of International Information Programs, Geographic, Near East Affairs who is not African-American, wondered why Perry, who "did the same thing" as Thomson, was a GS-12.  *Id.* ¶ 19.

As a result of Joria's refusal to promote her, Perry consulted with Human Resources.  A female, African-American employee of that office, GraTheryn Weston, performed a "desk audit" to evaluate whether Perry's position was properly classified as GS-12.  *Id.* ¶¶ 15-16.  Human Resources determined in June 2005 that Perry's responsibilities did not merit a GS-13 classification.  Perry challenged that conclusion, asserting that the Department had used different standards to evaluate her position than it had to consider the pay grade of any other Website Manager and that Weston had not included some of Perry's responsibilities in making the assessment.  Perry had a meeting with Human Resources representatives about these concerns, but her position remained a GS-12 and the other Website Manager positions remained GS-13s.

Perry alleges that beginning in 2004, Joria denied several requests she made to attend certain training sessions.  Def.'s Mot. to Dismiss, Ex. 7 at ¶ 18.  She also alleges that he declined to assist her in developing an Individual Development Plan, which would have included plans for training.  Perry asserts that the training she requested was related to her work responsibilities and would have "made it possible for me to advance and receive my GS-13 position within the Bureau."  Perry Decl. ¶ 28.

In October 2005, Perry again requested a promotion to GS-13.  Her request was denied. On October 7, 2005, Perry contacted an EEO counselor, and on December 30, 2005, she filed a formal complaint of discrimination.  The EEO counselor wrote a report summarizing her

counseling efforts.  The report identifies two allegations of discrimination and retaliation for the

1999 EEO complaint: (1) the denial of a promotion to GS-13 "[o]n a continuing basis since

August 2004 . . . including most recently on October 6, 2005, when management refused

[Perry's] request that they create a GS-13 Website Manager position" for her; and (2) that Joria

"denied or failed to respond to all of [Perry's] training requests and request for an Individual

Development Plan (IDP)."  Pl.'s Opp'n, Ex. 4 at 3-4 ("Dec. 2005 EEO Counselor's Report").

Perry subsequently supplemented her EEO complaint to include additional allegations.

Pl.'s Opp'n, Ex. 6 at 2-3 ("EEO Report of Investigation").  She alleged that some of her job

duties—including processing translated articles, photo editing, preparing the "Web Trends Usage

Report," and web page development—were transferred to other employees.  *Id.* at 12-13; Def.'s

Mot. to Dismiss, Ex. 8 at ¶¶ 2-6.

Perry initiated this action on July 16, 2008. By April 2, 2009, however, Perry had again

contacted an EEO counselor to make a complaint of recent discrimination based on her pay

grade, which remained GS-12.  Perry alleges that Richard Huckaby, her new supervisor,

requested that Perry become a GS-13 Electronic Publications Officer, a title given to at least one

Website Manager after an office reorganization; the request was denied without explanation and

Human Resources made her a GS-12 Electronic Publications Specialist instead.  First Am.

Compl. ¶¶ 36-37; Def's Mot. to Dismiss, Ex. 6 at 2 ("May 2009 EEO Counselor's Report").

Perry also alleged disability discrimination: she was in a car accident and her request for

advanced sick leave was denied.  First Am. Compl. ¶ 39; May 2009 EEO Counselor's Report at

2.

She then amended her complaint, filed on April 20, 2009, alleging that the Secretary's "compensat[ing] her less for performing the same work as her non-black and/or non female peers" constitutes race and gender discrimination, asserting that the Secretary has engaged in a "pattern and practice of discriminating against blacks and/or women in the terms and conditions in employment" (Count I), and alleging that the refusal to promote Perry, denial of her requests for training, transfer of her duties, and denial of her request for advanced sick leave constitute retaliation in response to protected activities (Count II).  First Am. Compl. ¶¶ 42, 46-47.

## II. LEGAL STANDARDS

### A.      Rule 12(b) Dismissal

The Secretary moves for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Rule 12(b)(1) provides that a complaint may be dismissed for lack of subject matter jurisdiction.  A court must accept the non-movant's factual allegations as true when reviewing a motion to dismiss under Rule 12(b)(1).  *Jerome Stevens Pharm. Inc. v. FDA*, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005).  A court may consider material beyond the allegations in the plaintiff's complaint when determining whether it has subject matter jurisdiction pursuant to Rule 12(b)(1).  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25, n.3 (D.C. Cir. 1997).

Under Rule 12(b)(6), a court may dismiss a complaint, or any portion of it, for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).  A court considering such a motion to dismiss must assume that all factual allegations are true, even if they are doubtful.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] plaintiff's obligation

to provide the 'grounds' of [her] 'entitle[ment] to relief,'" however, "requires more than labels

and conclusions . . . .  Factual allegations must be enough to raise a right of relief above the

speculative level."  *Id.* (internal citations omitted).

**B.      Summary Judgment and Rule 56(f)**

Summary judgment may be granted only where the "pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c); *Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002).  A material fact is one

that is capable of affecting the outcome of the litigation.  *Anderson v. Liberty Lobby*, 477 U.S.

242, 248 (1986).  A genuine issue is one where the "evidence is such that a reasonable jury could

return a verdict for the nonmoving party," as opposed to evidence that "is so one-sided that one

party must prevail as a matter of law."  *Id.* at 248, 252.  A court considering a motion for

summary judgment must draw all "justifiable inferences" from the evidence in favor of the

nonmovant.  *Id.* at 255.  But the non-moving party's opposition must consist of more than mere

unsupported allegations or denials and must be supported by affidavits or other competent

evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ.

P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Federal Rule of Civil Procedure 56(f) permits a court to (1) deny a motion for summary

judgment, (2) order a continuance for "affidavits to be obtained, depositions to be taken, or other

discovery to be had," or (3) "issue any other just order" where a party has shown that "it cannot

present facts essential to justify its opposition."  Fed. R. Civ. P. 56(f).  The party seeking to

invoke the Rule must "'state[] concretely' why additional discovery is needed to oppose a

motion for summary judgment." *Messina v. Krakower*, 439 F.3d 755, 762 (D.C. Cir. 2006)

(quoting *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir.

1989)) (alteration in original).

## C.     Title VII

Title VII of the Civil Rights Act provides that employment decisions by federal

employers must be "made free from any discrimination based on race, color, religion, sex, or

national origin."  42 U.S.C. § 2000e-16(a).  It also prohibits retaliation against any employee

because she "has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

Where there is no direct evidence of discrimination at the summary judgment stage,

courts apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973).  *See Holcomb v. Powell*, 433 F.3d 889, 901 (D.C. Cir. 2006).  Under this

framework, a plaintiff must first establish a prima facie case of discrimination or retaliation; the

defendant may then offer a legitimate nondiscriminatory or nonretaliatory reason for its actions;

and, finally, if the defendant does so, the plaintiff bears the burden of establishing that the

asserted reason is pretext.  *Id.*  The D.C. Circuit has instructed that in disparate treatment and

retaliation cases, if the employer has offered a legitimate, nondiscriminatory or nonretaliatory

reason for an employment decision, the first step in the *McDonnell Douglas* paradigm drops out

and the sole inquiry is whether the plaintiff "produced sufficient evidence for a reasonable jury

to find that the employer's asserted non-discriminatory [or non-retaliatory] reason was not the

actual reason."  *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008)

(establishing this rule of abandoning the burden-shifting analysis for a discrimination claim);

*Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (same, for a retaliation claim).

## III. ANALYSIS

**A.     Perry's Discrimination Claim (Count I)**

> **1.     Perry has exhausted her administrative remedies as to her disparate
> compensation claim.**

The Secretary argues that the Court should dismiss Perry's wage discrimination claim

because she has failed to exhaust her administrative remedies as to that theory.  The Secretary

asserts that Perry did not raise the issue during the administrative process but instead complained

only of the failure to promote her.  The Secretary quotes from a November 2005 letter from

Perry to her EEO counselor describing the issues presented for EEO review.  The letter states:

> On a continuing basis since August 2004, management has denied me a
> promotion to GS-13, including most recently on October 6, 2005, when
> management refused my request that they create a GS-13 Website Manager
> position in [my division] for which I could apply as a means of obtaining a
> promotion.

Def.'s Mot. to Dismiss, Ex. 2 at 1.  The Secretary quotes similar language in a letter from the

EEO to Perry.  Def.'s Mot. to Dismiss, Ex. 4 at 4.  The Secretary further argues that Perry's

claim regarding disparate pay "is not 'reasonably related' to the failure to promote claims raised

at the administrative level" and so should not be treated as exhausted.  Def.'s Mot. to Dismiss at

32.

Perry responds that her formal complaint of discrimination makes clear that she did raise

her wage discrimination claim at the administrative level.  Perry wrote: "I am the only Website

Manager who is at the GS-12 pay scale and all other Website Managers are GS-13.  I am the

only African-American."  Pl.'s Opp'n, Ex. 2 at 2.  Perry also quotes a statement in the EEO

counselor's report: "As to allegation (1), [that she had been denied a promotion, Perry] said after assuming her GS-12 position in July 2004, she learned all the other Website Managers, none of whom are African-American, are GS-13s."  Dec. 2005 EEO Counselor's Report at 4.  She further notes that the EEO investigator "collected the job descriptions of the other website managers, presumably for comparison purposes of their duties" and that she made arguments, in writing and orally, at the administrative level regarding wage discrimination.  Pl.'s Opp'n at 10.  Finally, Perry argues that even if she did not directly raise the wage discrimination claim at the administrative level, that claim is reasonably related to the allegations she did make, so she has exhausted her administrative remedies.

In order to properly file a Title VII action in federal court, a plaintiff must exhaust her administrative remedies.  *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).  The D.C. Circuit has held that, in accordance with the exhaustion requirement, a court may exercise jurisdiction over claims contained in a plaintiff's administrative complaint or claims "like or reasonably related to" those allegations.  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (internal quotation mark omitted)).  This standard means that "[a]t a minimum, the Title VII claims must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Id.* (quoting *Chisholm v. U.S. Postal Serv.*, 665 F.3d 482, 491 (4th Cir. 1981)).  Perry's formal complaint of discrimination alleges that she was discriminated against based on her race and sex[1] and explains that she is the only African-American Website Manager

---

[1]     The complaint also alleges age discrimination, but the present suit does not include such a claim.

as well as the only person in that position to be paid at GS-12 rather than GS-13.  Therefore, Perry raised a wage discrimination claim at the administrative level and thus exhausted her administrative remedies as to such a claim.

Furthermore, insofar as the formulation of the issues raised at the administrative level quoted by the Secretary raise a question as to whether Perry made a wage discrimination claim, such a claim is "reasonably related" to a failure to promote claim in this instance.  The EEO investigation that followed Perry's complaint demonstrates this connection: the investigation report describes Perry's allegations that she was the only African-American Website Manager, the only female Website Manager under Joria's supervision, and the only GS-12 Website Manager; in addition, the investigator interviewed Joria about DeLeon's responsibilities, presumably for purposes of comparison to Perry's duties.  EEO Report of Investigation at 4, 5. Cases in which claims have been deemed unrelated involve a much greater distinction between the allegations in the EEO complaint and the claims raised in federal court.  *See, e.g.*, *Park*, 71 F.3d at 908 (disallowing the addition of a hostile work environment claim where "Park's charge not only lack the words 'hostile work environment,' but also lacks any factual allegations supporting such a claim"); *Riggsbee v. Diversity Servs., Inc.*, 637 F. Supp. 2d 39, 43 (D.D.C. 2009) (concluding that employee had not exhausted her administrative remedies as to a sex discrimination claim where the employee had not checked the sex discrimination box on the EEO complaint form, nor had she provided factual support for that claim in the complaint, which alleged racial discrimination); *Hudson v. Children's Nat'l Medical Cent.*, — F. Supp. 2d —, 2009 WL 2568008, at *4 (D.D.C. Aug. 21, 2009) (holding that a claim of constructive discharge was not administratively exhausted where the EEO complaint "makes no mention of any

allegations regarding events occurring" at the time of the alleged discharge and collecting cases

reaching the same conclusion where "the two sets of allegations are temporally distinct, involve

unique incidents, and assert entirely different causes of action" (footnotes omitted)).[2]  Perry's

disparate compensation claim is properly before this Court.

**2.      Perry is entitled to discovery before attempting to rebut as pretext the Secretary's nondiscriminatory reasons for not promoting her to GS-13.**

The Secretary offers as a nondiscriminatory explanation for Perry's status as GS-12 that

the desk audit conducted by Human Resources confirmed that her position was properly

classified.  Because the Secretary has offered this nondiscriminatory reason for the employment

action, the Court considers whether Perry has shown that a reasonable jury could infer that

discrimination occurred.  *Brady*, 520 F.3d at 493-94.  This requirement is met if a reasonable

jury could find that the offered explanation was pretextual and "shielded discriminatory

motives." *Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C. Cir. 2007).  Courts have held that "an

inference of discrimination arises when 'similarly situated employees outside the protected class

are treated more favorably' than a plaintiff alleging discrimination."  *Turner v. Fed. Law

Enforcement Training Cent.*, 527 F. Supp. 2d 63, 73 (D.D.C. 2007) (quoting *Vargas v. Martinez*,

2005 WL 975732, at *2 (D.D.C. Apr. 26, 2005)).

---

[2]      The Secretary argues that *Martin v. MTA Bridges and Tunnels*, 610 F. Supp. 2d 238 (S.D.N.Y. 2009) is "[v]irtually identical" to the situation here, so the Court should follow the conclusion in that case that an unequal pay claim was not exhausted because it was not reasonably related to a failure to promote claim.  Def.'s Mot. to Dismiss at 24-25.  But in that case, the plaintiff's initial complaint "included no reference to salary disparity for similar work" and the contention that similarly situated, Caucasian employees were paid more for similar work was "asserted for the first time in opposition to summary judgment."  *Martin*, 610 F. Supp. 2d at 252-53.  Perry, in contrast, has compared her salary to that of other Website Managers since initiating the EEO process.

The Secretary argues that Perry cannot show that the Department's explanation is pretextual because Perry was not similarly situated to any other Website Managers. The Secretary reasons that because Perry alleges discrimination by Joria, only employees who were also under Joria's supervision might possibly be similarly situated to Perry. DeLeon was the only other Website Manager who worked under Joria, and he used Spanish and translated website content as part of his job; because Perry did not have those responsibilities, the Secretary argues, she was not similarly situated to him. The Secretary also argues that even if Perry can compare herself to Website Managers who do not work for Joria, she is not similarly situated to any Website Managers because her current GS-12 position does not allow a possibility of promotion.

Perry responds that the Court should not consider any arguments for summary judgment without permitting the parties to conduct discovery. She has submitted a Rule 56(f) declaration by her attorney, which explains that no discovery occurred at the administrative level nor has it occurred in this action,[3] to support that argument. Pl.'s Opp'n, Ex. 7 at 1 ("Rule 56(f) Decl.").[4]

A Title VII plaintiff can establish an inference that her employer's nondiscriminatory reason for the relevant employment action was pretext by presenting evidence that the employer treated other employees of a different race more favorably in the same factual circumstances.

---

[3]     The declaration explains that Perry was unrepresented at the time discovery could have occurred before the administrative proceedings in this case. No discovery has occurred in the action filed in this Court.

[4]     In the alternative, Perry argues that the Court should deny summary judgment to the Secretary because genuine issues of material fact exist as to the discrimination claims. Because the Court declines to rule on the merits of this question until discovery is completed, the Court need not address this argument.

*Laurent v. Bureau of Rehabilitation, Inc.*, 544 F. Supp. 2d 17, 22 (D.D.C. 2008). "To prove that she is similarly situated to another employee, a plaintiff must 'demonstrate that all of the relevant aspects of [her] employment situation were nearly identical to those of the [allegedly comparable] employee.'" *Id.* (quoting *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999)). The Court concludes that Perry is entitled to discovery before it can resolve a motion for summary judgment as to this issue. Perry's Rule 56(f) declaration states that she would request position descriptions for her own positions as well as for positions held by Website Managers Thomson and DeLeon; she would also seek information about the Website Manager position and the setting of its salary grade. Rule 56(f) Decl. at 3-6. The declaration also indicates that Perry would pose interrogatories designed to identify "individuals knowledgeable about these positions descriptions" as well as "the setting of the respective salary for them." *Id.* at 3, 5. These requests will produce information pertinent to whether other employees were similarly situated to Perry. Moreover, summary judgment is generally disfavored before discovery has occurred. *See Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997) ("[S]ummary judgment ordinarily 'is proper only after the plaintiff has been given adequate time for discovery.'" (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988))); *see also Bourbeau v. Jonathan Woodner Co.*, 600 F. Supp. 2d 1, 3 (D.D.C. 2009) (noting before denying defendant's motion for summary judgment and granting plaintiff's Rule 56(f) motion that "in discrimination cases 'summary judgment must be approached with special caution'" (quoting *Gray v. Universal Serv. Admin. Co.*, 581 F. Supp. 2d 47, 57 (D.D.C. 2008))). The Court therefore denies without prejudice the Secretary's request for summary judgment as to Perry's discrimination claim in order to allow time for discovery.

###### 3.      Perry has not exhausted administrative remedies as to her pattern and practice claim.

Perry's amended complaint alleges a pattern and practice claim as part of Count I.  The "pattern or practice" disparate treatment theory focuses on group-wide allegations of intentional discrimination; to establish a pattern or practice claim, plaintiffs must prove that intentionally discriminatory practices were the defendant's "standard operating procedure," not merely sporadic or isolated occurrences.  *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977).  Perry's formal complaint of discrimination alleges only that Perry was a victim of discrimination.  It does not suggest that any other individuals also suffered discrimination.  As explained above, a court may not exercise jurisdiction over a claim not raised, or "like or reasonably related to" claims raised, at the administrative level.  *Park*, 71 F.3d at 907.  Perry has not exhausted her administrative remedies as to a pattern and practice claim and, therefore, such a claim is not properly before this Court.  *Cf. Anyaibe v. Gilbert Sec. Serv., Inc.*, 1995 WL 322452, at *4-5 (D.D.C. May 18, 1995) (dismissing a pattern and practice claim as not reasonably related to the claim raised at the administrative level where "everything in the plaintiff's administrative charge related to personal discrimination against him; nothing addressed any harassment, retaliation, discrimination or other improper activities aimed at other [of the defendant's] employees").  Perry's pattern and practice claim will be dismissed.

## B.      Perry's Retaliation Claim (Count II)

To successfully make out a claim of unlawful retaliation, "an employee must show 'she engaged in protected activity, as a consequence of which her employer took a materially adverse action against her.'"  *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009) (quoting *Weber v. Battista*, 494 F.3d 179, 184 (D.C. Cir. 2007)).  An action is materially adverse if it "could well

dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)) (internal quotation marks omitted).

The Secretary makes a variety of arguments in support of the request for summary judgment as to Perry's retaliation claim.  These arguments include: any claim that Joria retaliated against Perry based on her 1999 EEO complaint must be dismissed because the lapse in time between the protected activity and the alleged retaliation is too long to establish retaliatory motive; the denial of training, loss of certain job duties, and denial of an advance in sick leave are not materially adverse actions sufficient to support a retaliation claim; and the retaliation Perry alleged occurred after her 2005 EEO complaint is not sufficiently connected to her previous allegations to properly be added to the current action.

The Court will not resolve these issues until Perry has had an opportunity to conduct discovery.  Each relevant question of law depends on facts evidence of which Perry has not yet obtained.  For instance, Perry seeks information regarding her requests for training, budgetary reasons behind the decision to deny her requests, whether Joria permitted GS-13 Website Managers and other employees to attend training sessions.  Rule 56(f) Decl. at 13.  She would also request information regarding her loss of job duties as well as any change in job duties of GS-13 Website Managers.  *Id.* at 14.  Evidence produced in response to these discovery requests could be pertinent to whether Perry can support an inference of "retaliation *vel non*" in light of the Secretary's nonretaliatory explanations for the actions of which she complains.  *Jones*, 557 F.3d at 678.  In addition, it is relevant to assessing whether the alleged retaliatory acts were materially adverse actions; such determinations are context-specific.  *See Burlington N. & Santa*

15

*Fe Ry. Co. v. White*, 548 U.S. 53, 69, 71 (2006) (stating that in general the consideration of whether an action is materially adverse "will often depend upon the particular circumstances" and holding more specifically that a "[w]hether a particular reassignment [of job duties] is materially adverse depends upon the circumstances of the particular case and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances."'" (quoting *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998))). Because Perry has not had the opportunity to conduct discovery as to these issues, summary judgment for the Secretary is denied without prejudice as to Count II.

### IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss or, in the alternative, for summary judgment, will be **GRANTED** in part and **DENIED** in part.  A separate order shall issue this date.


December 10, 2009.


ROYCE C. LAMBERTH
Chief Judge
United States District Court